**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Concepcion Salinas, | No. CV-21-00070-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Concepcion Salinas's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial and an Opening Brief (Doc. 16). Defendant SSA filed an Answering Brief (Doc. 20), and Plaintiff filed a Reply (Doc. 21)[1]. The Court has reviewed the briefs and Administrative Record ("AR") (Doc. 13), and it affirms the Administrative Law Judge's ("ALJ") decision (AR at 14-23) for the reasons addressed herein.

**I.    Background**

Plaintiff filed an Application for SSDI benefits on August 16, 2018, alleging an

---

[1] Plaintiff also filed a "Notice of Supplemental Authority" regarding a new case from the Ninth Circuit addressing the Agency's new medical guidelines. (Doc. 22). The Commissioner concurs with the Notice regarding the supplemental authority but opposes the seven pages of analysis that Plaintiff appends to her Notice. (Doc. 23). The Court agrees that a "Notice of Supplemental Authority" is not the proper mechanism by which to expand on a party's briefing after the deadlines have passed and without seeking permission from the Court. Therefore, the Court will not consider the additional arguments presented in the Notice, but it will take notice of the supplemental authority.

onset of disability date of July 9, 2017. (AR 14). The Application was initially denied on October 25, 2018, and upon reconsideration on December 31, 2018. (*Id.*) A hearing was held before ALJ Laura Speck Havens on July 15, 2020. (*Id.* at 29-58). Plaintiff was 45 years old at the time of her hearing and held previous employment as a caregiver, janitor, and security guard. (AR 21). Plaintiff's Application was denied in a decision by the ALJ on July 22, 2020. (*Id*. at 23). Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision and this appeal followed. (Doc. 1).

After considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the severe impairments of degenerative disc disease, lumbar spondylosis, bilateral carpal tunnel syndrome, arthritis, carotid artery aneurysm and obesity. (AR 16). While the ALJ noted that Plaintiff's severe impairments limited her ability to perform basic work activities, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, with a number of additional limitations, and thus was not disabled. (*Id.* at 18-19).

Plaintiff appeals the ALJ's decision finding her not disabled and requests this matter be remanded for an award of benefits. (*Id.*) The Commissioner argues that the ALJ's opinion is free of harmful error and must be affirmed. (Doc. 20). The Court has reviewed the medical record and will discuss the pertinent evidence in addressing the issues raised by the parties.

## II.     Legal Standards

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947,

954 (9th Cir. 2002) (citations omitted).  Whether the Commissioner's decision is supported by substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009).  In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the ALJ determines whether the claimant is presently engaging in substantial gainful activity.  20 C.F.R. §404.1520(a)(4)(i).  Second, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  Third, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is automatically found to be disabled.  *Id.*  At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If not, the claimant is disabled.  *Id.*

**III.   Analysis**

Plaintiff raises two issues on appeal: whether the ALJ failed to give clear and convincing reasons to discount her subjective symptom testimony, and whether the ALJ properly considered the assessment of treating nurse practitioner, Leslie Kotsis, A.N.P.C. ("Nurse Kotsis"). (Doc. 16 at 1).  Plaintiff requests this matter be remanded for an award of benefits.  (*Id.*)  The Commissioner argues that the ALJ's opinion is free of harmful error and must be affirmed.  (Doc. 20).  The Court will consider these issues in turn.

    **A.    The ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.**

Plaintiff argues that the ALJ did not provide legitimate reasons to discount her testimony, and therefore, that the Court should remand this matter for an award of benefits. (Doc. 16 at 10-16). The Commissioner argues that the ALJ properly examined the medical evidence to determine that the record did not support Plaintiff's testimony as to the severity of her symptoms. (Doc. 26).

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal citations omitted)). In evaluating a claimant's pain testimony after a claimant produces objective medical evidence of an underlying impairment, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). However, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains his decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). The ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff testified that she was unable to work because she had pain in her low back and right hand and numbness in the legs. (AR 43-46). She testified that she had difficulty gripping and grasping with both hands and sometimes dropped objects. (*Id.*) She testified that she could stand and walk for only five minutes before needing to sit down and could sit for only 20 minutes before needing to lie down or sit in a recliner. (*Id.*) She spent most

of her day in a recliner watching television. (*Id.* at 39, 46-47). As to other daily activities and responsibilities, Plaintiff lived with her 19-year-old son, and was responsible for the care of her nephew's five young children, ages eight to eleven. She testified that she was the only parent taking care of those children. (*Id.* at 38). Plaintiff testified that the father was supposed to take possession of the children "years ago and he never came back." (*Id.* at 40). She cooked and cleaned with assistance from her oldest son. (*Id.*) The ALJ also questioned Plaintiff's reasons for not working, stating that "[w]hen undersigned asked if she quit or was terminated from her job, the claimant did not provide a direct answer but instead indicated that her mother passed away and she was her caregiver." (AR 19).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence, including her testimony regarding activities of daily living. (*Id.* at 19-20). In so finding, the ALJ cited to many specific examples in the record.

Plaintiff generally argues that the ALJ's findings were not specific nor clear enough to discount her symptom testimony. (Doc. 16 at 11-15). Specifically, Plaintiff argues that the ALJ's discussion of her pain improvement does not necessarily discredit her opinion testimony as to remaining pain. *Id.* The ALJ acknowledged that Plaintiff did have impairments here, but that they were not as disabling as alleged. With respect to Plaintiff's knee replacement, the ALJ cited to two follow-up appointments where Plaintiff was noted to be doing "remarkably well" at the first and was observed with normal gait and overall was doing well at the second. (AR 19, citing 564-65). As to Plaintiff's back pain, the ALJ noted that Plaintiff reported 30-50% in back pain relief with medication. (*Id.* at 20, citing 515, 520, 606). The ALJ also noted that Plaintiff "received lumbar transforaminal injections and reported 50-75% improvement in pain." (*Id.* citing 520). As to the Plaintiff's carpel tunnel, the ALJ cited to records indicating "good relief from tingling and numbness" after surgery. (*Id.*) In short, the ALJ cited to numerous medical records showing improvement in Plaintiff's conditions after surgical procedures and successful

pain management with medication.

Regarding the ALJ's statement that Plaintiff quit her job for reasons other than her alleged symptoms, the Court has reviewed the transcript from the hearing and finds that the ALJ's statement is entirely consistent with the testimony at the hearing. (*Id.* at 34). There is no error here as this is relevant information for an ALJ to consider. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Moreover, Plaintiff does not argue that the ALJ's discussion of her daily activities were in error, so the Court will not discuss the issue other than to note that the ALJ did discuss her daily activities at length in the opinion, including Plaintiff's ability to care for five young children, and the Court finds no error in that discussion. (*Id.* at 19).

The ALJ concluded that the examinations in the medical record, and Plaintiff's own statements regarding her daily activities, did not support her claims of disabling limitations, and therefore, properly found that some of her subjective symptom testimony was not persuasive. (AR 18-21). While Plaintiff may see this evidence in a different light, the Court cannot second-guess the findings of the ALJ when there is no harmful error in the discussion of the symptom testimony. *See Thomas*, 278 F.3d at 954 ("[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The Court finds that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony. *See Brown-Hunter*, 806 F.3d at 488–89.

**B.     Medical Opinion Evidence**

Plaintiff next argues that the ALJ erred in her assessment of Nurse Kotsis's opinion. As Plaintiff applied for disability benefits after March 27, 2017, the new set of regulations for evaluating evidence from medical providers applies to this case. *See* 20 C.F.R. § 416.920c. These regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations for considering physician opinions states as follows:

> We will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[2]

The regulations define "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2). All "other medical evidence" that an ALJ considers as part of the Administrative Record is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3).

The new regulations also expand the definition of acceptable medical sources. "Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502 (d). Specifically, a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title," and a "Licensed Physician Assistant" are considered acceptable medical sources "for impairments within his or her licensed scope of practice." *Id.* at (a). The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b).

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to

---

[2] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

- 7 -

provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. at 792.

Here, Nurse Kotsis, Plaintiff's treating nurse practitioner, submitted a check-box questionnaire of Plaintiff's limitations. (AR 602-04). Nurse Kotsis opined that Plaintiff could sit for only three hours, could continuously stand or walk for only one hour, and could be on her feet for only two hours or less in an eight hour day. (*Id.*) Nurse Kotsis also checked that Plaintiff would be off task for 11% to 15% of a workday. The ALJ found these limitations to be inconsistent with the record. First, the ALJ acknowledged that Plaintiff had pain and limitations, but noted that she reported "50-75% reduction in back pain along with 30-50% reduction in pain with medications." (*Id.* at 21). The ALJ also discussed that Plaintiff had issues ambulating due to knee pain prior to her knee replacement surgery, but that Plaintiff had improvements to her gait, range of motion, and ambulation following surgery. (*Id.*) Following surgery, she had only minor swelling in her right knee and had pain-free range of motion and 5/5 strength. (*Id.* citing 565). Considering all the above, the ALJ found that Nurse Kotsis's opined limitations lacked support in the record.

Plaintiff argues the ALJ usurped the role of the doctors when she used Plaintiff's reduction in pain percentages to find that Nurse Kostis's limitations were excessive. (Doc. 16 at 18-21). The Commissioner concedes that the ALJ could have done a better job

linking the discussion of Plaintiff's medical record explicitly to the regulatory factors but argues that the link is clear enough to be surmised. (Doc. 20 at 15). The Court agrees. The ALJ cited to specific examples in the medical record that were inconsistent with Nurse Kotsis's opinion of debilitating limitations. Contrary to Plaintiff's arguments, the ALJ did not usurp the role of doctors in diagnosing Plaintiff's pain, but rather provided of summary of Plaintiff's various reported pain improvements. What Plaintiff offers in the alternative is a different interpretation of that evidence which the Court cannot entertain. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Because the ALJ cited to numerous examples in the medical record that directly conflict with the assessment of Nurse Kotsis, the Court is able to make the link between the regulatory requirements and the records discussed by the ALJ. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("While the ALJ may have explained her decision 'with less than ideal clarity,' the ALJ's 'path may be reasonably discerned.'"). Therefore, the Court finds no error here.

## IV.  Conclusion

The Court finds that substantial evidence supports the ALJ's nondisability determination. The ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence and properly considered the medical evidence of record. Therefore, the Court finds that the ALJ did not err in her decision, which is based on substantial evidence. *See Orn*, 495 F.3d at 630.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the ALJ is **affirmed**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 27th day of June, 2022.

Honorable Diane J. Humetewa
United States District Judge